Receipt number 9998-3972500

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
MAY 22 2017
U.S. COURT OF
FEDERAL CLAIMS

MAINE YANKEE ATOMIC
POWER COMPANY,

           Plaintiff,

v.

UNITED STATES OF AMERICA,

           Defendant.

No.  17-674 C

# COMPLAINT

Plaintiff Maine Yankee Atomic Power Company ("Maine Yankee"), through its undersigned counsel, files this Complaint against Defendant the United States of America, and states as follows:

## NATURE OF THE CASE

1. Under the Nuclear Waste Policy Act of 1982 ("NWPA"), the United States, acting through the Department of Energy ("DOE"), in 1983 entered into a contract with Plaintiff Maine Yankee pursuant to which DOE, in return for payment of substantial fees by Maine Yankee, is obligated to accept and permanently dispose of spent nuclear fuel and high-level nuclear waste (collectively, "SNF") generated by the commercial nuclear power plant owned and operated by Maine Yankee.

2. Even though Maine Yankee has paid all fees owed under the contract, DOE has failed to perform its SNF acceptance and disposal obligation, causing Maine Yankee to suffer significant damages.

3. This is the fourth suit Maine Yankee has filed against the United States seeking damages for DOE's continuing breach of its obligation to accept and permanently dispose of Maine Yankee's SNF. *See Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1376-78 (Fed. Cir. 2005) (hereinafter "*Indiana Michigan*") (holding that utilities should file successive partial breach actions to obtain damages incurred through the time of trial in each successive suit). The first suit addressed damages incurred by Maine Yankee as a result of DOE's breach through December 31, 2002 ("Phase I"); the second suit addressed damages for the period January 1, 2003 through December 31, 2008 ("Phase II"); and the third suit addressed Maine Yankee's damages for the period January 1, 2009 through December 31, 2012 ("Phase III"). This fourth suit addresses Maine Yankee's damages for the period January 1, 2013 through at least December 31, 2016 ("Phase IV").

### Phase I Litigation—Damages Incurred through December 31, 2002

4. Maine Yankee first brought a lawsuit alleging material partial breach of DOE's obligation to implement and operate a program for the permanent disposal of Maine Yankee's SNF in 1998. *Maine Yankee Atomic Power Co. v. United States*, No. 98-474C (Fed. Cl.) (Merow, S.J.). Maine Yankee's sister utilities, Connecticut Yankee Atomic Power Company (*Connecticut Yankee Atomic Power Co. v. United States*, No. 98-154C (Fed. Cl.) (Merow, S.J.)) and Yankee Atomic Electric Company (*Yankee Atomic Elec. Co. v. United States*, No. 98-126C (Fed. Cl.) (Merow, S.J.)) also brought suit against DOE for breach of their SNF contracts, which impose similar obligations on the utilities and DOE as does the Maine Yankee contract. The three Yankee cases were eventually consolidated for trial.

5. Breach of Maine Yankee's contract by DOE was established by the Court, *Yankee Atomic Elec. Co. v. United States*, 42 Fed. Cl. 223, 236 (1998) (Merow, S.J.), and affirmed by

the United States Court of Appeals for the Federal Circuit ("Federal Circuit"), *Maine Yankee Atomic Power Co. v. United States,* 225 F.3d 1336, 1342-43 (Fed. Cir. 2000) (hereinafter "*Maine Yankee*").

6. Subsequently, the Court conducted a seven-week trial on damages in July and August, 2004.

7. On September 30, 2006, Judge Merow, in a 103-page decision, ruled in favor of Maine Yankee in the amount of $75,774,554 for activities taken to address or mitigate the impacts of DOE's failure to perform through December 31, 2002. *Yankee Atomic Elec. Co. v. United States*, 73 Fed. Cl. 249, 326 n.75 (2006) (Merow, S.J.).

8. Defendant United States appealed Judge Merow's decision to the Federal Circuit, and Maine Yankee cross-appealed. On August 7, 2008, the Federal Circuit affirmed-in-part, reversed-in-part, and remanded the case to assess causation applying the SNF contractual acceptance rate specified by certain 1987 DOE documentation. *Yankee Atomic Elec. Co. v. United States*, 536 F.3d 1268 (Fed. Cir. 2008).

9. The Court conducted a five-day trial to address the remanded issues in August, 2009.

10. On September 7, 2010, Judge Merow, in a 94-page decision, ruled in favor of Maine Yankee in the amount of $81,690,866. *Yankee Atomic Power Co. v. United States*, 94 Fed. Cl. 678, 736 n. 67 (2010) (Merow, S.J.).

11. Defendant United States again appealed Judge Merow's decision to the Federal Circuit. On May 18, 2012, the Federal Circuit affirmed the trial court's award. *See Yankee Atomic Elec. Co. v. United States*, 679 F.3d 1354, 1363 (Fed. Cir. 2012). Defendant United States sought rehearing en banc, which was denied on September 5, 2012.

12. Defendant United States issued payment to Maine Yankee on January 30, 2013, in the amount of $81,690,866, thereby concluding the Phase I litigation.

**Phase II Litigation—Damages Incurred from January 1, 2003 through December 31, 2008**

13. In accordance with the *Indiana Michigan* Court's instruction to bring separate actions for damages as they are incurred, on December 14, 2007, Maine Yankee filed suit to recover damages incurred in years subsequent to those addressed in Phase I. *Maine Yankee Atomic Power Co. v. United States*, No. 07-877 (Fed. Cl.) (Merow, S.J.). Connecticut Yankee Atomic Power Company (*Connecticut Yankee Atomic Power Co. v. United States*, No. 07-875 (Fed. Cl.) (Merow, S.J.)) and Yankee Atomic Electric Company (*Yankee Atomic Elec. Co. v. United States*, No. 07-876 (Fed. Cl.) (Merow, S.J.)) also brought Phase II suits against DOE, and as in Phase I, the three Yankee cases were eventually consolidated for trial.

14. Following an audit process and discovery, whereby the parties significantly reduced the issues in dispute, the Court conducted a three-day trial in October 2011 to address Maine Yankee's damages for the period January 1, 2003 through December 31, 2008.

15. On November 1, 2013, Judge Merow, in a 38-page decision, ruled in favor of Maine Yankee in the amount of $35,760,992. *Yankee Atomic Elec. Co. v. United States*, 113 Fed. Cl. 323, 347 (2013) (Merow, S.J.).

16. Defendant United States issued payment to Maine Yankee on March 28, 2014, in the amount of $35,760,992, thereby concluding the Phase II litigation.

**Phase III Litigation—Damages Incurred from January 1, 2009 through December 31, 2012**

17. On August 16, 2013, Maine Yankee filed suit to recover damages incurred in years subsequent to those addressed in Phase II. *Maine Yankee Atomic Power Co. v. United States*, No. 13-585 (Fed. Cl.) (Merow, S.J.). Connecticut Yankee Atomic Power Company (*Connecticut

*Yankee Atomic Power Co. v. United States*, No. 13-586 (Fed. Cl.) (Merow, S.J.)) and Yankee Atomic Electric Company (*Yankee Atomic Elec. Co. v. United States*, No. 13-584 (Fed. Cl.) (Merow, S.J.)) also brought Phase III suits against DOE, and as in the prior phases, the three Yankee cases were eventually consolidated for trial.

18. Following an audit process and discovery, whereby the parties again significantly reduced the issues in dispute, the Court conducted a two-day trial from June 30 through July 1, 2015 to address Maine Yankee's damages for the period January 1, 2009 through December 31, 2012.

19. On March 25, 2016, Judge Merow, in a 25-page decision, ruled in favor of Maine Yankee in the amount of $24,583,166. *Yankee Atomic Elec. Co. v. United States*, 125 Fed. Cl. 641, 658 (2016) (Merow, S.J.) (hereinafter "*Yankee Atomic*").

20. Among other rulings, the Court determined that absent DOE's breach of its SNF acceptance and disposal obligation, Maine Yankee would have been out of business by the end of 2008. *See Yankee Atomic*, 125 Fed. Cl. at 647.

21. Defendant United States issued payment to Maine Yankee on October 14, 2016, in the amount of $24,583,166, thereby concluding the Phase III litigation.

**Phase IV Litigation—Damages Incurred from January 1, 2013 through December 31, 2016 (Or Some Other Date Prior to Trial)**

22. DOE still has not performed its obligation to accept and dispose of Maine Yankee's SNF, and continues to refuse to provide a firm date for commencing to do so.

23. Therefore, in accordance with the *Indiana Michigan* Court's instruction to bring separate actions for damages as they are incurred, Maine Yankee now brings this lawsuit to recover significant damages caused by DOE's material partial breach of its obligation to accept

5

and dispose of Maine Yankee's SNF during the period starting January 1, 2013 and ending no earlier than December 31, 2016 (hereinafter "Phase IV period").

## PARTIES

24. Plaintiff Maine Yankee is an electric utility company incorporated under the laws of the State of Maine. Maine Yankee's sole electricity generating facility was a nuclear power plant located in Wiscasset, Maine. That plant has been permanently shut-down and decommissioned. Maine Yankee's Independent Spent Fuel Storage Installation ("ISFSI"), the SNF it stores, and certain buildings related to SNF storage are all that presently remain at the Wiscasset site. The ISFSI cannot be decommissioned and the requisite Nuclear Regulatory Commission license cannot be terminated until DOE performs its obligation to accept and dispose of Maine Yankee's SNF.

25. Defendant is the United States of America, acting by and through the DOE.

## JURISDICTION

26. This Court has jurisdiction over this matter pursuant to 28 U.S.C § 1491(a)(1).

27. DOE's failure to comply with its contractual obligation to accept and dispose of Maine Yankee's SNF has been conclusively determined to be a material partial breach of the contract, for which Maine Yankee may seek recovery of its damages without exhausting any administrative remedies. *See Maine Yankee*, 225 F.3d at 1342-43.

## STATEMENT OF FACTS

### The Nuclear Waste Policy Act and Maine Yankee's 1983 Contract

28. In 1982, Congress enacted the NWPA which created a program for the permanent disposal of SNF generated by commercial nuclear power plants. The NWPA codified DOE's

responsibility for the permanent disposal of SNF. The NWPA made utilities responsible for the costs of the program.

29. Consistent with the NWPA, Maine Yankee entered into a contract with DOE on June 6, 1983. A copy of Maine Yankee's contract as executed with DOE is attached as Exhibit 1. The contract requires DOE to commence performance of disposal obligations not later than January 31, 1998. The contract also requires DOE to arrange for, and provide, transportation casks and all necessary transportation of the SNF from Maine Yankee's site to a DOE facility. The contract permits DOE to use any appropriate facility operated by or on behalf of DOE in order to carry out its obligations under the contract.

30. Maine Yankee's contract provides that Maine Yankee would pay DOE fees which, together with fees paid by other utilities pursuant to contracts under the NWPA, would be sufficient for DOE to implement and operate a program for the prompt disposal of all SNF that Maine Yankee would be ready to deliver.

31. Maine Yankee's contract provides that, in return for the payment of such fees, DOE would in fact implement and operate a program for the prompt disposal of all SNF that Maine Yankee would be ready to deliver.

32. In accordance with the contract, Maine Yankee has paid DOE all of the fees required for disposal of its SNF, and remains ready to deliver its SNF to DOE.

### DOE's Breach of Its Contractual Obligation

33. DOE did not begin to accept and dispose of SNF by January 31, 1998, as required by the NWPA and its contract with Maine Yankee, and has consistently extended the earliest time at which it expects to begin accepting SNF. DOE has refused to provide any firm commencement date for the disposal of Maine Yankee's SNF.

34. In the predecessor Phase I litigation, the Federal Circuit concluded that DOE's failure to begin accepting SNF by the January 31, 1998 contractual deadline constituted a breach of its contract with Maine Yankee. *Maine Yankee*, 225 F.3d at 1342-43.

### Maine Yankee's Damages

35. The Court previously determined that absent DOE's breach, Maine Yankee would have been out of business by the end of 2008. *See Yankee Atomic*, 125 Fed. Cl. at 647. Accordingly, had DOE performed its SNF acceptance and disposal obligation, Maine Yankee would not have incurred costs of any kind during the Phase IV period.

36. Maine Yankee remained in business and continued to incur operating expenses during the Phase IV period only because it is required to store and safeguard the SNF that remains on its property as a result of DOE's breach.

37. As a result of DOE's continuing material partial breach, Maine Yankee has incurred, for the period starting January 1, 2013 and continuing through at least December 31, 2016, significant additional costs for its continued corporate existence and extended storage of its SNF, including without limitation, costs associated with labor, staff augmentation and other contracted work, insurance, materials and supplies, security and surveillance, utilities, regulatory oversight, fees, taxes, and other costs.

### COUNT I
### (Partial Breach of Contract)

38. Paragraphs 1 through 37 are incorporated herein by reference as if set forth in full.

39. The 1983 contract between Maine Yankee and DOE imposes an unconditional obligation on DOE to accept and dispose of Maine Yankee's SNF promptly and to commence performance beginning in 1998, in return for Maine Yankee's payment of specified fees.

40. Maine Yankee has paid DOE all of the fees required for disposal of its SNF.

41. In the predecessor Phase I litigation, the Federal Circuit concluded that DOE's failure to begin accepting SNF by the January 31, 1998 contractual deadline constituted a material partial breach of its contract with Maine Yankee. *Maine Yankee*, 225 F.3d at 1342-43.

42. DOE has continued to default on its contractual obligation to promptly accept and dispose of Maine Yankee's SNF. All of Maine Yankee's contract claims in this action are solely for damages arising from DOE's failure of performance, which constitutes a material partial breach of contract. Maine Yankee insists that DOE eventually meet its obligation to accept and dispose of Maine Yankee's SNF, and, should DOE fail to do so, Maine Yankee reserves all rights to assert new and separate claims at that time and to seek remedies appropriate for a complete breach of the contract.

43. As a direct, proximate and substantial result of DOE's partial breach of contract, Maine Yankee has incurred and will continue to incur additional costs associated with its continued corporate existence and extended storage of its SNF.

44. By reason of the foregoing, Defendant United States is liable to Maine Yankee for damages for partial breach of contract.

## COUNT II
### (Breach of the Implied Duty of Good Faith and Fair Dealing)

45. Paragraphs 1 through 44 are incorporated herein by reference as if set forth in full.

46. The 1983 contract between Maine Yankee and DOE imposed upon DOE an implied duty of good faith and fair dealing.

47. The implied duty of good faith and fair dealing required DOE to cooperate with Maine Yankee and to reasonably perform its duties under the contract.

48. DOE breached its duty of good faith and fair dealing by failing and refusing to accept and dispose of Maine Yankee's SNF, by failing and refusing to take appropriate steps to

ensure that DOE would be able to accept and dispose of Maine Yankee's SNF, and by otherwise failing to perform its duties under the contract.

49. As a direct, proximate and substantial result of DOE's breaches of its duty of good faith and fair dealing, Maine Yankee has incurred and will continue to incur additional costs associated with its continued corporate existence and extended storage of its SNF.

50. By reason of the foregoing, Defendant United States is liable to Maine Yankee for damages for breach of the implied duty of good faith and fair dealing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Maine Yankee Atomic Power Company demands judgment against Defendant United States:

On Count I, for significant damages, in an amount to be determined at trial;

On Count II, for significant damages, in an amount to be determined at trial;

On all Counts, for interest and for such costs, expenses and attorneys' fees as are available under applicable law, and such other relief as this Court may deem necessary and proper.

Dated:   May 22, 2017

Respectfully submitted,

/s/ Robert H. Stier, Jr.
ROBERT H. STIER, JR.
PIERCE ATWOOD LLP
Merrill's Wharf
254 Commercial Street
Portland, ME  04101
rstier@pierceatwood.com
Telephone:  (207) 791-1100
Facsimile:  (207) 791-1350

OF COUNSEL:

LUCUS A. RITCHIE
lritchie@pierceatwood.com
PIERCE ATWOOD LLP

MICHAEL J. DERDERIAN
mderderian@pierceatwood.com
PIERCE ATWOOD LLP


*Attorneys for Plaintiff Maine Yankee Atomic Power Company*